# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| 7-ELEVEN, INC.,<br>    Plaintiff, | |
| v. | No. 3:15-cv-01011 (JAM) |
| NATASHA KHAN, et al.,<br>    Defendants. | |

## ORDER DENYING  REQUEST FOR LEAVE TO FILE COUNTERCLAIMS

This is a lawsuit between plaintiff 7-Eleven, Inc. ("7-Eleven"), and three defendants: Natasha Khan, 32528 Unionville, Inc. ("Unionville"), and Warren Shuck. The central dispute is over who owns certain gasoline tanks and related equipment at a former 7-Eleven convenience store location in Unionville, Connecticut.

7-Eleven has sued the three defendants, principally seeking the right of access to and recovery of gasoline tanks and related equipment that are at the site of its former franchise location in Unionville. Defendants, however, contend that 7-Eleven has no right to the tanks and equipment because 7-Eleven allegedly sold Unionville all the tanks and equipment at the time of terminating its franchise agreement. Although I have concluded after an evidentiary hearing on 7-Eleven's motion for a preliminary injunction that 7-Eleven is likely to prevail with respect to its claim to the gasoline equipment, I have denied 7-Eleven's motion for preliminary injunctive relief for lack of a showing of irreparable harm. *See* Doc. #79. In view of the continuing environmental risks involved, the Court anticipates that this matter will proceed to trial at the first available jury selection date this Spring.

Despite having previously filed an answer to 7-Eleven's complaint, two of the defendants—Khan and Unionville—have filed a "request" for leave to file several counterclaims

against 7-Eleven. *See* Doc. #89. These counterclaims would vastly expand the facts subject to litigation in this case involving the parties' dealings during the entire franchise agreement. For its part, 7-Eleven has opposed the filing of the proposed counterclaims on several grounds, including that the counterclaims are barred by the terms of a contractual release that Khan and Unionville entered into with 7-Eleven at the time of the termination of the franchise agreement. I agree. Because the parties' release agreement plainly bars the counterclaims, I will deny leave for Khan and Unionville to amend the pleadings to assert their proposed counterclaims.

## BACKGROUND

The Court assumes familiarity with the underlying facts of the case as related in the Court's ruling denying 7-Eleven's motion for a preliminary injunction. *See* Doc. #79. Since at least 2002, 7-Eleven leased property from defendant Shuck for a convenience store in Unionville, Connecticut. 7-Eleven had previously acquired and owned the gasoline equipment on the property before the events that gave rise to this lawsuit. For some years prior to 2013, the father of Natasha Khan operated the Unionville location as a 7-Eleven franchisee. Following his death, 7-Eleven employees operated the store for several months. 7-Eleven then entered into a franchise agreement with Unionville to operate the store and gasoline station in December 2013. The Franchise Agreement was signed on behalf of Unionville by Khan as "President/Secretary/Treasurer." *See* Pl. Exh. #6 (preliminary injunction hearing).

By late 2014, 7-Eleven had decided to terminate its lease with Shuck and its franchise agreement with Unionville. In January 2015, 7-Eleven informed Khan and her brother, Jahangir Khan (who managed the store on a day-to-day basis), that it would be terminating the agreement. 7-Eleven offered the Khans the opportunity to move to a different 7-Eleven location, but the Khans refused and stated their intention to operate an independent convenient store at the

Unionville location. The Khans contend that 7-Eleven employees told them they could purchase the gasoline equipment from 7-Eleven, and thus continue to sell gas. 7-Eleven insists that they informed the Khans numerous times that it would not sell the gasoline equipment. Extensive evidence on all this was considered by the Court at the preliminary injunction hearing.

On June 10, 2015, 7-Eleven and Unionville (by means of the signature of Natasha Khan signing in her individual and corporate capacity) entered into a Termination and Settlement Agreement. *See* Pl. Exh. #9. The Termination and Settlement Agreement provided for the end of the franchise agreement in five days on June 15, 2015, and then the continued operation of an independent convenience store at the Unionville location. The Termination and Settlement Agreement provided in part for Unionville to give up its right under the Franchise Agreement to transfer to another 7-Eleven franchise location, all in return for a payment of $25,000 from 7-Eleven and for "a release of all claims, if any, against 7-Eleven." *Id.* at 1 (Preamble, ¶ E). Unionville further agreed that on June 15, 2015, it would execute a separately appended agreement—called "Release of Claims and Termination." *Id.* at 2 (¶ 5(l)). Moreover, 7-Eleven agreed that it would waive the non-competition provisions of the Franchise Agreement against Unionville "[i]n exchange for your termination of the [Franchise] Agreement and release of all claims, if any against 7-Eleven." *Id.* at 3 (¶ 11).

In addition, under the terms of the Termination and Settlement Agreement, Unionville agreed to purchase certain property from 7-Eleven for $20,000. *Id.* at 2-3 (¶ 6). The parties, however, failed to specify in writing precisely what equipment was being sold, which ambiguity gave rise to this litigation.

As noted, the parties agreed to a formal turnover of the store on June 15, 2015, from 7-Eleven to Unionville. On that morning of June 15, 7-Eleven personnel attempted to remove the

gasoline dispensers. Jahan Khan resisted, and 7-Eleven personnel left the dispensers, but padlocked the so-called "fill" cover for the gas tanks in hope that they could not be used until the tanks were later removed. At around 1:30 p.m. that day, Natasha Khan and 7-Eleven representative Ed Colgan signed the document titled, "Release of Claims and Termination" (the "Release"). This document provided in relevant part for the mutual release of legal claims by the parties against each other:

> You and we hereby mutually agree that . . . all claims, demands, rights, duties, guarantees, obligations, debts, dues, sums of money, accounts, covenants, contracts, controversies, agreements, promises, torts, judgments, executions, liabilities, damages, injunctions, assignments, suits or causes of action . . . of every kind and nature, however, or wherever arising, whether known or unknown, foreseen or unforeseen, direct, indirect, contingent or actual, liquidated or unliquidated, which have arisen or which might or could arise under federal, state, or local law from any relationship, incident, or transaction arising or occurring under the Agreement or under any agreement in connection therewith, or from the execution, operation under or termination of the Franchise Agreement, and any services provided to you under the Franchise Agreement or under any other agreement relating to the Store, existing or arising at any time before or at the time of the execution of this Agreement, are hereby mutually satisfied, acquitted, discharged and released by you and us on your and our behalf and on the behalf of any person claiming under or through you or us, it being the express intention of you and us that this release be as broad as permitted by law.

Pl. Exh. #10. The 7-Eleven personnel then left.

 Further disputes over the ownership of the gasoline equipment ensued. Despite attempts by 7-Eleven contractors to remove the tanks, the Khans resisted these efforts, and the tanks remain today and in operation at the Unionville store

7-Eleven brought this lawsuit alleging that it is the true owner of the gasoline equipment and, among other claims, that defendants unlawfully converted the tanks for their own use. Following the filing by 7-Eleven of an amended complaint (Doc. #38), defendants Khan and Unionville filed an answer in which they set forth as a first and only affirmative defense that the Release barred 7-Eleven's claims against them. Doc. #43 at 6.

4

As noted above, I denied 7-Eleven's motion for a preliminary injunction. Doc. #79. In ruling on the motion for preliminary injunction, I noted there that was no need at that time to address the enforceability of the Release, because the Release was not signed by defendant Shuck, such that—regardless whether the Release would foreclose the litigation of claims between 7-Eleven and Khan and Unionville—7-Eleven's claim of conversion against defendant Shuck would remain for resolution and as a proper basis for the consideration of injunctive relief. Doc. #79 at 13.

Defendants Unionville and Khan now move for leave to amend their answer to file counterclaims alleging fraudulent misrepresentation, negligent misrepresentation, breach of the covenant of good faith and fair dealing, violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq.*, and violation of the Connecticut Franchise Act, Conn. Gen. Stat. § 42-133e-g. Docs. #89, #90. All of these claims are based on events occurring prior to and leading up to the parties' execution of Termination and Settlement Agreement and the Release.

## DISCUSSION

A court should generally "freely give" leave to a plaintiff to amend a complaint. Fed. R. Civ. P. 15(a). "However, leave to amend a complaint may be denied when amendment would be futile." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). A proposed amendment is futile when the pleading does not contain sufficient factual matter to state a plausible claim to relief. *See Lavigne v. Michael's Stores, Inc.*, 2015 WL 1826169, at *4 (D. Conn. 2015). Here, 7-Eleven contends that defendants' counterclaims are futile because they are barred by the Release. I agree.

The Release, by its terms, very broadly releases both parties from "all claims" whether "known or unknown" and "foreseen or unforeseen" that "have arisen or which might or could

arise under federal state, or local law from any relationship, incident, or transaction arising or occurring under the [Franchise] Agreement or under any agreement in connection therewith, or from the execution, operation under or termination of the Franchise Agreement." Pl. Exh. #10 (¶ 2). The parties state their intention "that this release be as broad as permitted by law." *Ibid.*

"A release is an agreement to give up or discharge a claim." *Viera v. Cohen*, 283 Conn. 412, 428 (2007). Here, the terms of the Release are "clear and unambiguous," and as with any contract I must therefore "glean the parties' intent from the four corners of the instrument." *RJE Corp. v. Northville Indus. Corp.,* 329 F.3d 310, 314 (2d Cir. 2003) (*per curiam*); *see also Poole v. City of Waterbury*, 266 Conn. 68, 89 (2003). It is "well-nigh impossible to imagine a more all encompassing release" than agreed to by the parties in this case. *Tallmadge Bros. v. Iroquois Gas Transmission Sys., L.P.,* 252 Conn. 479, 499 (2000).

Defendants Khan and Unionville do not and cannot reasonably dispute that all of their counterclaims are within the scope of the Release, because these claims derive from a "relationship … arising or occurring under the [Franchise] Agreement," or at the least from the "termination of the Franchise Agreement." Counts One and Two of the proposed counterclaims, which allege misrepresentation, arise from actions 7-Eleven allegedly took while negotiating the Termination and Settlement Agreement. Counts Three and Four, which allege breach of the covenant of good faith and fair dealing and violations of CUTPA, concern the same underlying conduct. Count Five, which alleges violations of the Connecticut Franchise Act, concerns the original formation of the Franchise Agreement and then 7-Eleven's decision to terminate it. All claims arising from this conduct fall squarely within the terms of the Release.

Defendants Khan and Unionville raise two arguments in support of their assertion that the Release does not preclude their counterclaims. First, they argue that if the Release bars the

counterclaims, then "it should bar the plaintiff's own claims as well, and its complaint should be outright dismissed." Doc. #95 at 10. Whatever merit this argument may have, it is irrelevant to the instant motion. It is a basic rule of civil procedure that "[a] request for a court order must be made by motion," Fed. R. Civ. 7(b)(1), not by means of a stray plea for ancillary relief in a parties' reply brief concerning a different motion. Defendants have not filed a motion to dismiss 7-Eleven's complaint but instead have moved to add their counterclaims. In this context, it makes no difference whether or not the Release also bars 7-Eleven's claims against Natasha Khan and Unionville.

Second, defendants aver without elaboration that they "have evidence the Release was procured fraudulently." Doc. #95 at 10. But this runs contrary to defendants' prior reliance on the Release as an affirmative defense in their filed answer as well as a defense to 7-Eleven's motion for preliminary injunction. Indeed, their contention that the Release barred any claim against them by 7-Eleven was a central feature of defendants' preliminary injunction briefing and argument (albeit without accompaniment by a filed motion to dismiss the claims on this basis). For example, before the injunction hearing, defendants asserted that "there is no evidence . . . that the general release would not apply to this situation." Doc. #37 at 4. At the proceeding itself, defendants' counsel stated in his opening remarks that "we will show evidence that the release would apply." Doc. #59 at 17. He further stated that "it's not really the Court's role in terms of the release, in my view, to look beyond the four corners of the document," and that there were "[d]isputes prior to the signing of the document . . . which means that the document would apply." *Id.*

A federal court is not powerless to prevent a party from urging contradictory claims as convenience might beckon in litigation. *See Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12,

23 (1st Cir. 1998); *see also Abbvie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology Trust*, 2013 WL 4729376, at *4 (S.D.N.Y. 2013) (discounting litigant's new interpretation of an arbitration clause in part because its "current position contradicts the arguments it previously made to this Court" when it had different interests).

One embodiment of this principle is the doctrine of judicial estoppel, which seeks "to protect the integrity of the judicial process." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). This doctrine prohibits "parties from deliberately changing positions according to the exigencies of the moment." *Id.* at 750. Further, while the Supreme Court has identified factors that courts should typically consider in deciding whether to apply the doctrine, it has also emphasized that the doctrine does not have "inflexible prerequisites" and that it is not "reducible to any general formulation of principle." *Id.*; *see also United States v. Apple, Inc.*, 791 F.3d 290, 337 (2d Cir. 2015).[1] Judicial estoppel is invoked within the Court's discretion, "to prevent improper use of judicial machinery." *New Hampshire,* 532 U.S. at 749. I am convinced that it would be improper to permit defendants to change their position on this central issue of the enforceability of the Release at such a late stage of the litigation.[2] I therefore do not credit defendants' contention that the Release was fraudulently induced and invalid.

---

[1] To be sure, an additional reason to invoke judicial estoppel may be if a party has actually persuaded a court to rely on its prior inconsistent position, *see* Apple, 791 F.3d at 337, but because the application of judicial estoppel is an equitable doctrine without particular prerequisites, such actual reliance is not always required. Here, the fact that defendants pleaded the Release as an affirmative defense and then invited me to rely on what they now claim with no evidentiary basis to be a fraudulent Release to bar injunctive relief convinces me that equity warrants invocation of judicial estoppel.

[2] I also note that a substantial evidentiary record has already been developed in this case that undermines defendants' contention. Though a court conducting a futility analysis would typically take all alleged facts as true, when the parties make their motion so late in the litigation, it is proper to consider the evidence that has been adduced. *See Ayyad-Ramallo v. Marine Terrace Associates LLC*, 2014 WL 2993448, at *11 (E.D.N.Y. 2014) (finding amendment would be futile where plaintiff "had the opportunity to fully amplify her . . . factual allegations" at her temporary restraining order and preliminary injunction hearings, and had not shown "that amendment of the complaint would be productive"); *see also Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110-11 (2d Cir. 2001) (it is proper to consider evidentiary record when motion to amend is filed in response to a summary judgment motion). While the specific claims defendants seek to raise were not at issue at the preliminary injunction hearing, the Court raised the issue of the Release several times. *See* Docs. #59 at 9-11, #60 at 452-53. In fact,

Accordingly, I conclude that defendants Khan and Unionville have not plausibly alleged that the Release does not apply to their counterclaims. The moment is long gone for them to argue that the Release was procured fraudulently. I will therefore deny the motion for leave to amend because the proposed amendment of their pleading would be futile.

If defendants Unionville and Khan wish to seek dismissal of 7-Eleven's claims against them on the ground that these claims are barred by the Termination and Settlement Agreement and the Release, they shall file a motion and memorandum in support within 14 days by February 2, 2016, and 7-Eleven may file any opposition to such motion by February 16, 2016. The Court anticipates that it will promptly rule on such motion in view of the parties' proximate trial date.

Because defendant Shuck was not a signatory to the Termination and Settlement Agreement or to the Release, it may be that defendant Shuck does not have any rights to assert under these agreements, but defendant Shuck may pursue in good faith any such relief as the law allows. The Court once again strongly recommends that defendant Shuck retain counsel to protect his interests in this litigation.

## CONCLUSION

For the foregoing reasons, defendants' motion for leave to file counterclaims (Doc. #89) is DENIED.

It is so ordered.

---

defendants Khan and Unionville argued that the Release barred 7-Eleven's claims against them. Further, the parties and their witnesses testified at length about discussions between the Khans and 7-Eleven representatives, and little to no evidence was adduced that would draw into question the validity of the Release. Indeed, Jahan Khan's testimony suggested he and his sister understood what a release of claims was, making an argument that they were defrauded into signing it less plausible. *See* Doc. #60 at 414 (discussing he and his sister's choice to either sign the Equity Building Budget Agreement ("EBBA") or "sign a release of claims and just walk away"); Doc. #60 at 422 ("[A]t the time [when the EBBA was signed] I thought maybe . . .  a release of claims would have been a better choice."); Doc. #60 at 448-49 (discussing the signing of the Release on June 15).

Dated at New Haven this 19th day of January 2016.

/s/ ***Jeffrey Alker Meyer***
Jeffrey Alker Meyer
United States District Judge